J. Machir Stull (SBN 24070697)
**CANTEY HANGER LLP**
1999 Bryan Street, Suite 3300
Dallas, Texas 75201
Telephone: (214) 978-4100
Facsimile: (214) 978-4150
mstull@canteyhanger.com

**ATTORNEY FOR THE
OBJECTING PARTIES**

### UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 18-33730-hdh** |
| **REVOLUTION MONITORING, LLC,** | ) | |
| _____ | ) | |
| | ) | |
| **REVOLUTION MONITORING** | ) | **Case No. 18-33731 hdh** |
| **MANAGEMENT, LLC,** | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| **REVOLUTION NEUROMONITORING LLC** | ) | **Case No. 18-33732-hdh** |
| | ) | |
| Debtors. | ) | **(Jointly Administered)** |
| _____ | ) | |

**OBJECTION OF BLUECROSS BLUESHIELD OF SOUTH CAROLINA,
BLUECHOICE HEALTHPLAN OF SOUTH CAROLINA, INC., PLANNED
ADMINISTRATORS, INC, AND PALMETTO GBA, LLC TO MOTION
<u>OF LIQUIDATING TRUSTEE FOR RULE 2004 EXAMINATION</u>**

**COMES NOW** BlueCross BlueShield of South Carolina, BlueChoice Health Plan of South Carolina, Inc., Planned Administrators, Inc.,[1] and Palmetto GBA, LLC (collectively, the

---

[1] On May 14, 2019, Planned Administrators, Inc. ("***PAI***") received two (2) subpoenas from the above-captioned debtors (together, the "***Debtors***"), by and through Joyce W. Lindauer, that requested much of the same information. PAI informed Ms. Lindauer via letter on May 21, 2019 that the subpoenas did not comply with Federal Rule of Bankruptcy Procedure 9016 because PAI does not regularly transact business in Texas or within 100 miles of Texas.

1

"***Objecting Parties***"), by and through their undersigned attorney, and hereby object to the *Motion of Liquidating Trustee for Rule 2004 Examination* [Dkt. No. 147] (the "***Motion***") for the following reasons:

### I.   OBJECTIONS

1. The Liquidating Trustee provides no specific indication from the Motion how the information it seeks through a Rule 2004 exam relates to the "acts, conduct, or property or to the liabilities and financial condition of the debtor" affecting the administration of the estate. *See* Fed. R. Bankr. P. 2004. Instead, the Motion only provides that the Liquidating Trustee needs information to "identify and validate all recoverable medical accounts receivable." *See* Motion at ¶ 2. This, like Liquidating Trustee's subpoena requests attached as Exhibit B to the Motion, is overly broad and place an unreasonable burden on the Objecting Parties.

2. Further, the Objecting Parties have significant concerns that prohibit them from producing most, if not all, of the documents requested in Exhibit B to the Motion. **First**, the Objecting Parties believe producing such documents would be in violation of the Health Insurance Portability and Accountability Act ("***HIPAA***") Standards for privacy of Individually Identifiable Health Information. **Second**, producing the requested documents would exceed any permissible scope of a subpoena and result in an undue burden and expense on the Objecting Parties. **Third**, much of the information requested by the Liquidating Trustee should be obtainable from the records of the Debtors.

### A. Producing the requested documents would be in violation of HIPAA

3. Despite the Liquidating Trustee's explanation of each patient's pre-procedure authorization for Debtor to receive their protected health information ("***PHI***") and that it is "seeking PHI for purposes of payment determinations," *see* Motion at ¶ 7, the Objecting Parties are concerned about the legal risk regarding disclosure of PHI protected by HIPAA. To their

knowledge, the Objecting Parties do not have access to the alleged assignment of benefits in favor of Revolution signed by each patient.

4. Regardless of any prior authorization of patients, 45 C.F.R. 164.512(e)(1)(ii)(A) requires the patient to waive privacy rights with knowledge about the litigation or proceeding through which the information is sought. The Objecting Parties therefore believe that any prior authorization through an Assignment of Benefits is insufficient. Further, the Liquidating Trustee requests "[a]ll responses to appeals and any other documents referring or relating to each such appeal." Documentation on these appeals is likely not covered by any waiver in an Assignment of Benefits.

5. The Liquidating Trustee proposes a protective order with Covered Entities (defined in the Motion to include the Objecting Parties) to solve issues relating to the disclosure of PHI. However, no such protective order has been provided, reviewed or approved by the Objecting Parties as required by 45 C.F.R. 164.512(e)(1)(ii)(B).

6. Finally, and perhaps most importantly, the Objecting Parties repeat their assertion that the Liquidating Trustee has not shown how the requested PHI is relevant and necessary to the administration of the estate. Without further justification and explanation, along with a refinement of the request and appropriate protections, the Objecting Parties do not believe it is appropriate to produce such information.

**B. Producing the requested documents would exceed the scope of a subpoena**

7. Second, the requested documents exceed any permissible scope of a subpoena and results in an undue burden and expense to the Objecting Parties. Responding to both the scope and detail of the requested information places an unreasonable and onerous obligation on the

Objecting Parties in both time and expense when the Liquidating Trustee can, or should, be able to get most of these documents from the Debtor.

8.      Without the specific Patient and Claim Listing for each Moving Party, the Objecting Parties are unable to know the exact breadth of finding and producing the requested documents.  Answering twenty-eight (28) document requests for each of the Debtors—three (3) separate providers—is a phenomenal task.  Although the Debtors are related by name, each Debtor would require a separate search for each of the Objecting Parties.  Multiple steps are required for each search.

9.      Looking to only the first six (6) documents requests, the Objecting Parties would have to: cross-reference a patient ID to the group number associated with the service date; request the group plan document or Summary of Benefits & Coverage for each patient; for older service dates, search repositories on a claim-by-claim basis; conduct research to explain the pricing, most of which would be derived from the host insurer's plan allowables, which the Objecting Parties do not control; and locate and print each patient's Explanation of Benefits.  Further, the Debtors request all appeals information, not just those appeals submitted by the Debtors.  This information is located separately from other patient information, would require extensive manual research, and would result in voluminous files.  These previously-described searches would use at least five (5) departments within the Objecting Parties and take countless hours—and this is only in responding to the first six (6) requests by Debtors.

10.     To locate and review all of the responsive records would require also require an excessive amount of expense and man-power.  Such extensive effort should not be forced upon a non-party to the bankruptcy.

### C. **Many of the requested documents are available through the Debtors' own records**

11. Third, much of the information requested by the Liquidating Trustee should be obtainable from the records of the Debtors. The Liquidating Trustee is essentially asking the Objecting Parties to re-create the Debtors' records. By producing a patient and claim listing, the Debtors are aware of which patients were treated and when. Assuming the Debtors were reimbursed on these claims, the Debtors would have a remittance that lists the allowable amount of each claim and details the reason for any denial or cutback of the claim. Further, the Debtors should have all Electronic Funds Transfer Transaction Records in their own records.

## II. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, based on the foregoing, the Objecting Parties respectfully request that the Court deny the Motion of the Liquidating Trustee for Rule 2004 Examination of Blue Cross Blue Shield of South Carolina, BlueChoice Health Plan of South Carolina, Inc., Planned Administrators, Inc., and Palmetto GBA, LLC and grant the Objecting Parties such other and further relief as the Court deems just and proper.

[*remainder of page intentionally left blank*]

Date: September 26, 2019          Respectfully,

By: */s/ J. Machir Stull*

J. Machir Stull
Texas Bar No. 24070697
**CANTEY HANGER LLP**
1999 Bryan Street, Suite 3300
Dallas, Texas 75201
Telephone: (214) 978-4100
Facsimile: (214) 978-4150
Email: mstull@canteyhanger.com

**ATTORNEY FOR BLUECROSS BLUESHIELD OF SOUTH CAROLINA, BLUECHOICE HEALTH PLAN OF SOUTH CAROLINA, INC., PLANNED ADMINISTRATORS, INC., AND PALMETTO GBA, LLC**

## CERTIFICATE OF SERVICE

I, J. Machir Stull, do hereby certify that on this the 26th day of September, 2019, this Objection was served on all parties entitled to service under the Court's ECF system and was served via email upon counsel for the Liquidating Trustee, Steven Holmes (sholmes@chfirm.com).

*/s/ J. Machir Stull*
J. Machir Stull