Andrew G. Jubinsky
Texas Bar No. 11043000
andy.jubinsky@figdav.com
Amber D. Reece
Texas Bar No. 24079892
amber.reece@figdav.com
**FIGARI + DAVENPORT, LLP**
901 Main Street, Suite 3400
Dallas, Texas 75202
Telephone: (214) 939-2000
Facsimile: (214) 939-2090

*Counsel for UnitedHealth Group Incorporated and its subsidiaries and affiliates*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>REVOLUTION MONITORING, LLC, *et al.*,<br><br>　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 18-33730-hdh |

**UNITEDHEALTH GROUP INCORPORATED'S OPPOSITION TO
MOTIONS OF THE TRUSTEE FOR AUTHORITY
TO CONDUCT RULE 2004 EXAMINATIONS**

UnitedHealth Group Incorporated and certain of its subsidiaries and affiliates, including Care Improvement Plus Group Management, LLC, Golden Rule Insurance Company, Health Plan of Nevada, Inc., Peoples Health Inc., Sierra Health and Life Insurance Company, Inc., UMR, Inc., and UnitedHealthcare, Inc. (collectively,

"United")[1] submit this Objection (the "Objection") to the Motion of Liquidating Trustee for Rule 2004 Examination (Dkt. 147) (the "Motion") filed by Jeffrey H. Mims, the Liquidating Trustee (hereinafter, the "Trustee").

United objects to the Motion on several grounds. First, the Rule 2004 Motion seeks authority to issue subpoenas to a list of dozens of targets that has not been narrowed by any meaningful or reasonable measure. Moreover, the apparent scope of the discovery sought exceeds any permissible scope and would subject the examinees to significant hardship and expense, as well as legal risk regarding disclosure of confidential protected health information ("PHI") under Health Insurance Portability and Accountability Act ("HIPAA").[2]

Second, the Trustee failed to comply with the meet and confer obligation under L.B.R. 2004-1(a). As a result, should this Court be inclined to permit any of the examinations to go forward, the Court should first require the Trustee to meet and confer

---

[1] The Motion (as defined herein) appears to attempt to identify various entities that may be affiliated with United including, without limitation, "Care Improvement Plus Group Management, LLC," "Golden Rule Insurance CO," "Health Plan of Nevada INC.," "Peoples Health Inc," "Sierra Health and Life Insurance Company, Inc.," "UMR, Inc. successor to Commonwealth Administrators, LLC," and "UnitedHealthcare, INC." Because the 2004 Motion fails to utilize proper legal names for potential witnesses, United is unable to confirm the identity of all United-related entities named in the Rule 2004 Motion. By objecting herein, United does not consent to service of any subpoena on itself or any of its subsidiaries or affiliated entities and does not waive any objection relating to the Trustee's failure to properly identify any particular United entity.

[2] Although the Trustee indicates that he "is willing to propose and execute a HIPAA-compliant protective order(s) with any Covered Entity that requests such additional protection," no such proposed order was included with the Rule 2004 Motion. (*See* Mot. at 4.) Further, although the Trustee claims that Revolution has obtained authorizations from each of its patients for the release of all of their medical and billing records as part of an assignment of benefits, the Trustee has not provided copies of any such authorizations. (Mot. at 4.) Moreover, as further discussed *infra*, to the extent that any plan or policy at issue contains valid and enforceable anti-assignment provisions, any such releases may be insufficient even if they exist. Without having been provided a list of claims and the corresponding assignment of benefits about which the Trustee seeks information, United cannot fully evaluate or respond to the Trustee's statements or fully assess all of its potential bases for objecting to the Motion.

with the proposed examinees to establish a reasonable procedural framework to ensure the orderly administration of the examinations.

Finally, the Trustee may lack standing to pursue some or all of the underlying claims alluded to in the Rule 2004 Motion against United and, thus, there can be no basis to seek discovery regarding claims that are not cognizable. Accordingly, to the extent the Court allows any of the examinations to go forward, they should be limited in scope to information relevant to (i) the collection of accounts receivable; and (ii) only for the collection of such accounts receivable for which the Trustee can show the existence of a valid assignment of benefits from the insured. In support of its Objection, United respectfully states as follows:

## BACKGROUND

1. United provides health care benefits to its members who are insured under its policies and administers the self-insured health plans of third parties, by which the members of those self-insured plans may also access medical care.

2. Revolution Monitoring, LLC, Revolution Monitoring Management, LLC, and Revolution Neuromonitoring, LLC (together "<u>Revolution</u>") were "out-of-network" for United's plans and policies, meaning that there was no direct agreement between Revolution and United related to payment for those services.

3. According to the Rule 2004 Motion, the Trustee seeks the information "to identify and validate all recoverable medical accounts receivable" (collectively, the "<u>Accounts Receivable</u>"). (Mot. at 2.)

# **OBJECTION**

A. **THE PROPOSED DOCUMENT REQUESTS ARE OVERBROAD.**

4. The Rule 2004 Motion is vastly overly broad with respect to the "Covered Entities" they target and the scope of the information sought. The scope of a Rule 2004 examination is "not limitless." *In re Buccaneer Res.*, LLC, 14–60041, 2015 WL 8527424, at *6 (Bankr. S.D. Tex. Dec. 10, 2015) (citations omitted). Various courts have held that a party invoking Rule 2004 must show good cause to do so. *See In re Express One Int'l*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) (citing *In re Eagle-Picher Industries, Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994)); *see also In re Drexel Burnham Lambert Group*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991); *In re Hammond*, 140 B.R. 197, 202 (S.D. Ohio 1992).

5. "Generally, good cause requires a showing that the examination sought is necessary to establish the claim of the party seeking the examination, or the denial of such request would cause the proposed examiner undue hardship or injustice." *In re Express One Int'l*, 217 B.R. at 217 (citing *In re Dinubilo*, 177 B.R. 932, 943 (E.D. Cal. 1993)). Additionally, "if the cost and disruption to the examinee attendant to a requested examination outweigh the benefits to the examiner, the request should be denied." *In re Express One Int'l*, 217 B.R. at 217 (citation omitted); *see also In re Buccaneer Res., LLC*, 2015 WL 8527424, at *6 (same, citing *In re Express One Int'l*).

6. Here, the Trustee seeks eighteen ambiguous categories of documents relating to a "Patient & Claim Listing" that is not included in the Motion nor in the attached Exhibits, many of which appear to seek records that are unlikely to contain

information actually relevant to the Trustee's work and seek disclosure of privileged, confidential, and/or proprietary and trade secret information. By way of example, a single claim for benefits may have hundreds of pages of related documents that could be responsive to the proposed requests as drafted. Moreover, to even begin to locate and review all of the potentially responsive records in United's possession, custody, or control, would require an excessive amount of time and expense as it would require exhaustive, yet precise, electronic searches of numerous electronic systems. To even design such a search would require diversion of dozens of employees from their regular duties, which is simply not feasible. It strains credulity to imagine that the issues at stake in this action are of sufficient importance to justify such an endeavor by a non-party.

7. Further, the effort to locate, assemble, and produce the responsive records would be a massive undertaking, the undue burden and expense of which should not fall on United. By way of example, a single claim for benefits may have hundreds of pages of related documents that could be responsive to the document requests as drafted—although the majority of those potentially responsive documents are unlikely to contain information actually relevant to the Trustee's work. To even begin to locate and review all of the potentially responsive records in United's possession, custody, or control, would require an excessive amount of time and expense as it would require exhaustive, yet precise, electronic searches of numerous electronic systems. To even design such a search would require diversion of dozens of employees from their regular duties, which is simply not feasible. It strains credulity to imagine that the issues at stake in this action are of sufficient importance to justify such an endeavor by a non-party.

B. **THE TRUSTEE FAILED TO COMPLY WITH L.B.R. 2004-1.**

8. The Trustee has failed to comply with the procedural requirements of L.B.R. 2004-1. Specifically, L.B.R. 2004-1 requires that a party moving for examinations pursuant to Rule 2004 confer with the proposed examinee or its counsel prior to filing.

9. Here, the Trustee has failed to do so, and offers no explanation for that failure. Accordingly, to the extent that this Court is inclined to grant the Motion, even in part, the Trustee should be compelled to (1) comply with the meet and confer requirement of L.B.R. 2004-1 as described above and (2) narrowly define the information that may be discoverable to limit the examinee's burden and potential HIPAA concerns.

C. **ANY RULE 2004 EXAMINATION PERMITTED SHOULD BE LIMITED TO INFORMATION RELEVANT TO DISPUTES THAT THE TRUSTEE WOULD HAVE STANDING TO PURSUE.**

10. The Motion should be denied to the extent the Trustee lacks standing to pursue claims underlying the proposed examinations. It is well-established in the Fifth Circuit that "'[a]fter confirmation of a plan, the ability of the debtor' or its representative 'to enforce a claim once held by the estate is limited to that which has been retained in the plan.'" *Adler v. Frost (In re Gulf States Long Term Acute Care of Covington, L.L.C.)*, 614 F. App'x 714, 717 (5th Cir. 2015) (citing *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351 (5th Cir. 2008)). "For a debtor to preserve a claim, the plan must expressly retain the right to pursue such actions. The reservation must be specific and unequivocal. A blanket reservation of 'any and all claims' is insufficient to preserve the debtor's standing to sue." *Id*. (internal quotation marks and citations omitted).

11. The generalized reservations in the Plan are problematic for the Trustee because the Plan fails to identify any specific claims beyond collection of the "Accounts Receivable" and "Retained Causes of Action." (Dkt. 138 at 2, 5.) Accordingly, any other claims contemplated by the Trustee have been lost and the scope of any Rule 2004 Examinations should be limited accordingly.[3]

12. Moreover, for the Trustee to pursue claims for receivables for medical services rendered by Revolution, the Trustee would only have standing to pursue such claims if he could show a valid assignment of benefits from the insured under the respective health plan. *See LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 351 (5th Cir. 2002) (holding that provider has no direct claim against health plan and, "absent a valid assignment of benefits from [the insured], [the provider] would have no derivative standing to sue the Plan under ERISA Section 502"). Thus, there would be no good cause for the Trustee to seek discovery under Rule 2004 for claims for which he does not have valid assignments of benefits since he would lack standing to assert such claims.

13. If the Rule 2004 Motions are granted, the relief should be limited in (1) scope to information relevant to the collection of such Accounts Receivable for which the Trustee can show the existence of a valid assignment of benefits from the insured, and (2) content to an electronic spreadsheet of claims information under provider tax identification numbers ending 8843, 1017, 5319 describing the (1) provider identification

---

[3] Nothing herein constitutes an admission as to the adequacy of the Plan's preservation of any claim against United.

number under which the claim was submitted, (2) claim number, (3) service dates, (4) amounts billed, (5) amounts and dates of any related payments including deductibles, copayments, or coinsurance, (6) procedure codes, (7) diagnosis codes, and (8) reasons for the denial of payment (where applicable).

## CONCLUSION

14. Based on the foregoing, United respectfully requests that the Court deny the Rule 2004 Motions, and grant United such other relief that the Court deems just and proper.

Dated: September 26, 2019

Respectfully Submitted,

By: /s/ *Andrew G. Jubinsky*
Andrew G. Jubinsky
Texas Bar No. 11043000
andy.jubinsky@figdav.com
Amber D. Reece
Texas Bar No. 24079892
amber.reece@figdav.com

**FIGARI + DAVENPORT, LLP**
901 Main Street, Suite 3400
Dallas, Texas 75202
Telephone: (214) 939-2000
Facsimile: (214) 939-2090

**ATTORNEYS FOR UNITEDHEALTH GROUP, INC. AND ITS SUBSIDIARIES AND AFFILIATES**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 26, 2019, a copy of the foregoing was served on all counsel of record herein by the Court's ECF notification system.

>  */s/ Andrew G. Jubinsky*
>  Andrew G. Jubinsky