### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| | § | |
| REVOLUTION MONITORING, LLC | § | Case No. 18-33730-hdh |
| | § | |
| REVOLUTION MONITORING | § | Case No. 18-33731-hdh |
| MANAGEMENT, LLC | § | |
| | § | |
| REVOLUTION NEUROMONITORING LLC | § | Case No. 18-33732-hdh |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

| | | |
|---|---|---|
| MEDARC, LLC, as Collection Agent for | § | |
| Jeffrey H. Mims, Trustee of the Liquidating | § | |
| Trust of Revolution Monitoring, LLC, | § | |
| Revolution Monitoring Management, LLC, and | § | |
| Revolution Neuromonitoring, LLC. | § | Adversary No. 20-XXX |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| HUMANA, INC.; *et al*. | § | |
| | | |
| *Defendants*. | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

## INTRODUCTION

1.     This is an action by MedARC, LLC, as collection agent for Jeffrey H. Mims,
Trustee of the Liquidating Trust of Revolution Monitoring, LLC, Revolution Monitoring
Management, LLC, and Revolution Neuromonitoring, LLC (hereafter "Revolution" or
"Debtors") against health insurance companies for failure to properly reimburse Revolution for
medical services rendered to insureds/patients. Revolution obtained assignments of benefits from

its patients, who are the insureds of the Defendants named below. Revolution provided medical services to those patients for the claims at issue between June 2014 and August 2017. Revolution then properly and timely submitted claims for reimbursement to Defendants for the services it provided. Defendants failed to properly reimburse Revolution pursuant to the terms of the employee benefit plans or insurance contracts covering those patients for the services that Revolution rendered. Defendants' failure to reimburse spanned over a period of approximately three years, covering more than 250 claims and exceeding $30,000,000 million in rendered medical services.

2.      As explained more fully below, Debtors' Second Joint Plan of Reorganization (Dkt. No. 139) and Plan Supplement (Dkt No. 146) granted the Plaintiff standing to pursue Debtors' assigned claims against these Defendants to seek compensation for the services Revolution rendered and which Revolution (and Revolution's Liquidating Trust) are owed under the health benefit plan.[1]

## THE PARTIES

3.      Plaintiff MedARC, LLC serves as the Collection Agent for Jeffrey H. Mims, Trustee of the Liquidating Trust of Revolution Monitoring, LLC, Revolution Monitoring Management, LLC, and Revolution Neuromonitoring, LLC, pursuant to the Bankruptcy Plan and Plan Supplement. MedARC, LLC is a limited liability company organized in the State of Texas with its principal place of business at 3400 Carlisle, No. 550, Dallas, Texas 75204, which is located in the Northern District of Texas.

---

[1] The Revolution Monitoring, LLC bankruptcy petition was filed in the Northern District of Texas on September 27, 2018, and it is currently pending as case no. 3:18-bk-33730. The Revolution Monitoring Management bankruptcy petition was filed in the Northern District of Texas on October 5, 2018, and it is currently pending as case no. 3:18-bk-33731. The Revolution Neuromonitoring, LLC bankruptcy petition was filed in the Northern District of Texas on October 5, 2018, and it is currently pending as case no. 3:18-bk-33732.

4.     Revolution Monitoring LLC, prior to its bankruptcy, was a Texas Company and its offices were located in 4925 Greenville Ave., Suite 200, Dallas, TX 75206, which is located in the Northern District of Texas. Revolution Monitoring, LLC's current principal place of business is 6437 Southpoint Dr., Dallas, TX 75248, which is located in the Northern District of Texas. Revolution Monitoring Management LLC and Revolution Neuromonitoring LLC are affiliates of Revolution Monitoring LLC.

5.     Humana, Inc. ("Humana") is a corporation organized in the State of Delaware with its headquarters located at 500 W. Main Street Louisville, KY 40202.

6.     Defendant Humana Insurance Company ("Humana Insurance") is a corporation organized in the State of Wisconsin with its headquarters located at 1100 Employers Boulevard Depere, WI 54114.

7.     Defendant Humana Government Business, Inc. d/b/a Humana Military ("Humana Military") is a corporation organized in the State of Delaware with its headquarters located at 500 W. Main Street Louisville, KY 40202.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409, as well under 28 U.S.C. § 1391(b), (c), and (d), because Defendants resided, transacted business, were found, or had agents in this District, and a substantial part of the events or omissions giving rise to these claims occurred in this District.

9.     Counts I-VI are non-core matters arising in or related to a case under title 11. Plaintiff consents to entry of a final order on these claims by this Court.

10. Jurisdiction and venue are also appropriate in this Court because Plaintiff's claims arise in part under 29 U.S.C. §§ 1001, et seq., the Employment Retirement Income Security Act ("ERISA"). Therefore, this Court has jurisdiction over those claims under 28 U.S.C. § 1331. Furthermore, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's non-ERISA claims, as those claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

11. This court has personal jurisdiction over all Defendants. Under 29 U.S.C. § 1132(e)(2), a federal district court of the United States may exercise personal jurisdiction over a defendant where the defendant has sufficient ties to the United States. Each Defendant in this action has sufficient ties with the United States. Furthermore, each of the Defendants have purposefully availed themselves of the privilege of conducting activities in the state of Texas and established minimum contacts sufficient to confer jurisdiction. The assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice, and is consistent with the constitutional requirements of due process.

12. Defendants had continuous and systematic contacts with the state of Texas specifically giving rise to the causes of action asserted in this complaint, sufficient to establish specific jurisdiction.

13. In accordance with 29 U.S.C. § 1132(e)(2), venue is proper because the Northern District of Texas is the district where the plans were administered, where the breach took place, and/or where a defendant resides or may be found. Furthermore, the non-ERISA claims arose out of a common nucleus of operative facts as the ERISA claims in this lawsuit.

14.     Venue is properly established in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this suit occurred in Texas and in this judicial district.  Specifically, the majority of the relevant medical services performed by Revolution were performed in Texas, and many of the relevant medical services were performed in this district.

## FACTS COMMON TO ALL COUNTS

### A.     BACKGROUND

15.     Prior to bankruptcy, Revolution was a medical provider that offered intraoperative neurophysiological monitoring ("IONM" or "IOM") medical services to neuro, orthopedic, vascular and ear, nose and throat (ENT) surgeries operating around delicate parts of the nervous system.  These medical services were primarily provided in spinal, cranial, facial, throat and peripheral (*e.g.* arms, legs, hand and feet) surgeries. Their teams consisted of seasoned professionals.

16.     IONM technology allows monitoring the state of the nervous system in "real-time" during surgery to alert surgeons of potential evolving neurologic injury and may allow for corrective actions to be implemented to prevent permanent deficits, thus improving safety and surgical outcomes.[2] In other words, the technology allows a surgeon to know, while the patient is still on the table and under anesthesia, whether something has gone wrong, giving the surgeon the ability to address the problem without needing a second surgery or, in the worst case, crippling or even killing the patient.

---

[2] *See, e.g.*, http://med.stanford.edu/neurology/divisions/neuromonitoring.html (explaining how IONM works); https://personal.utdallas.edu/~golden/ionm/ (providing another explanation of IONM); https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3763097/ (explaining "Intraoperative neurophysiological monitoring (IOM) is now an integral part of many surgical procedures."); https://www.asnm.org/page/History (describing the history of the American Society of Neurophysiological Monitoring).

17. Healthcare providers, such as Revolution, are classified as either "in-network" medical providers or "out-of-network" medical providers. In-network medical providers have pre-determined rates with health insurance companies. Out-of-network medical providers do not have pre-determined rates with health insurance companies. Health insurance companies are required to pay for out-of-network services in accordance with the health benefit plan.

18. Patients pay significantly higher health insurance premiums for out-of-network health benefits in order to have access to out-of-network medical providers. Patients pay these higher premiums, at least in part, for assurance and peace of mind that they will be able to obtain necessary medical services from the physician, medical provider, and medical facility of their choice.

19. Defendants are in the business of providing, underwriting and/or administering various forms of health insurance, including individual, employer-sponsored, and governmental health insurance coverage. Through these plans, Defendants reimburse insureds for certain health care expenses, subject to the terms, conditions, and benefit limitations set forth under the plans.

20. The claims at issue relate to health benefit plans that were either fully-insured or self-insured plans. Under a fully-insured plan, an employer or individual contracts with an insurance company who assumes financial responsibility for the payment of medical claims and administrative costs. Under a self-insured plan, an employer acts as the insurer and itself assumes financial responsibility for payment of medical claims. Employers retain the services of insurance companies, such as Defendants, to administer their self-insured health benefit plans. In administering the self-insured plans at issue in this case, Defendants exercised discretionary authority over the management of the plans, the disposition of the plan assets, and the adjudication of claims.

21.     Defendants underwrite and/or administer the health insurance benefits of numerous insureds ("Humana Insureds") in the State of Texas and, on information and belief, in other states.

22.     On information and belief, the majority of the Humana Insureds are covered by health benefit plans offered, underwritten, or administered by Defendants as part of a private employee welfare benefit plan governed by ERISA.  ERISA governs all such private employee health and welfare benefit plans, whether they are fully-insured or self-funded.

23.     Additionally, on information and belief, certain of the Humana Insureds are covered by ERISA-exempt health benefit plans, which are issued by governmental agencies, churches, or plans (or insurance contracts) acquired by individuals, and not through a private employer.

24.     On information and belief, Defendants were the claim administrators and administered each and every claim at issue in this lawsuit. Defendants exercised discretion, control, authority and/or oversight in the administration of each of the claims. Specifically, Defendants interpreted the health benefit plan documents, distributed benefits under the plan terms, and determined the amount, if any, to pay Revolution for their medical services under these claims.

25.     Defendants acted as the de facto plan administrator for each and every claim at issue in this lawsuit. Defendants exercised control over the health benefit plans generally and assumed responsibility for providing plan documentation to participants and/or their agents. Defendants either undertook and performed the duties of the plan administrator, and/or were delegated the administrator's duties by the health benefit plan.

26.     Revolution rendered medical services to the Humana Insureds and was supposed to be paid by Defendants directly for providing such medical services through the issuance of benefits under the terms of the health benefit plans. Each of these services was reported by Revolution or Plaintiff to Defendants for reimbursement purposes pursuant to the American Medical Association's Current Procedural Terminology ("CPT"), which is used by licensed providers in submitting health insurance benefit claims to third party payers, including insurers such as Defendants.

27.     Because the benefits payments to Revolution were based on Defendants' evaluation and assessment of the terms and conditions of ERISA plans, ERISA governs the adjudication and disposition of these benefits payments. Further, because Defendants paid plan benefits directly to Revolution as an assignee under the benefits assignments received from the Humana Insureds, Revolution and therefore, Plaintiff, is deemed to be a plan beneficiary under ERISA, with standing to assert rights and protections under the ERISA statute.

### B.     MEDICAL SERVICES, CLAIMS, AND DENIALS

28.     As a matter of policy, Revolution followed the same process for each and every claim as described below.

29.     This process is routine for Revolution's business and within the health care industry, and follows the procedures set forth in the health benefit plan documents.

30.     Revolution received orders from physicians requiring the scheduling of medical services to be performed by Revolution at the physician's surgical facility. The orders contained (among other things) the patient's name, contact information, and identified the medical services to be performed.

31.     As a matter of policy and procedure, before Revolution rendered reasonable and necessary medical services for any of the claims at issue, Revolution received verification by

telephone from Defendants that each patient was covered by a health benefit plan that provided out-of-network benefits. Revolution obtained verification from Defendants that the particular procedures were covered by the relevant health benefit plan and would be paid in accordance with the health benefit plan. During the verification process, Defendants failed to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the relevant health benefit plans, including but not limited to anti-assignment provisions. Revolution would not have provided these services to these patients without first obtaining this verification from Defendants.

32.     Following the verification process, the physician scheduled the medical services with the patient, and informed Revolution of the relevant information to ensure that Revolution was available to perform medical services.

33.     As a matter of policy, each Humana Insured treated by Revolution signed an assignment of benefits form ("Assignment of Benefits"). Exhibit A, adopted and incorporated herein by reference, is an example of the copy of the Assignment of Benefits each patient executed upon arrival for a procedure at Revolution's facility. The executed Assignment of Benefits transferred and assigned to Revolution the following non-exhaustive list of rights and interests: (1) the rights and interest to collect and be reimbursed for the medical service(s) performed for the patient; (2) the rights and interest to obtain plan documents and other related documentation and information by both provider and its attorney; (3) the rights and interest to any legal or administrative claims and causes of action; (4) the right to bring legal action, if needed, against the insurer or health benefits plan to recover costs or enforce coverage; and (5) the reasonable assistance of the patient in pursuing third-party payments.[3]

---

[3] *See* Exhibit A. The operative language of this assignment reads in part as follows:

34.     Pursuant to these Assignments of Benefits, Revolution (and by extension Plaintiff) have standing to pursue claims for benefits on behalf of the Humana Insureds under ERISA, and under the laws of the State of Texas and, on information and belief, other states.

35.     Following treatment, pursuant to the Assignment of Benefits, Revolution was entitled to payment from Defendants and directly submitted to Defendants claims forms for reimbursement of services rendered to the Humana Insureds.

36.     Defendants are obligated under the health benefit plans to pay in accordance with the Humana Insured's right to receive reimbursement for out-of-network care.

37.     After medical services were performed, Revolution properly and timely submitted claims through Defendants' designated claims handling channels. Defendants either denied the claims outright or drastically underpaid the claims. Once again, Defendants failed to identify,

---

Signature below also consents to request Revolution Monitoring, LLC to submit all invoices associated with the professional services performed during my surgery to my designated insurer or health benefits plan, on my behalf. I consent to and request that my insurance company reimburse Revolution Monitoring, LLC directly for any invoices submitted on my behalf for professional services rendered by the above named company. If for any reason my health benefits plan or insurance company does not reimburse Revolution Monitoring, LLC directly for services rendered on my behalf and reimburses me, I agree to send all payments by my insurer for IntraOperative Neurophysiologic Monitoring and all explanation of benefits to Revolution Monitoring immediately. Failure to remit such payment would make me legally responsible for the reimbursement of Revolution Monitoring, LLC the full amount of their professional fees, co-payments, co-insurance, or deductible amounts for which I am responsible, for delivery of IntraOperative Neurophysiologic Monitoring performed during my surgery. I am also aware that I am legally held responsible for the costs of the IntraOperative Neurophysiologic Monitoring services in my health benefits plan or insurance company fails or refuses to remit the costs for such services.

I authorize Revolution Monitoring, LLC and/or its attorneys to file any necessary claims, demands, or appeals with my insurer or health benefits plan from a denial of reimbursement or coverage for IntraOperative Neurophysiologic Monitoring services provided on my behalf. I also assign Revolution Monitoring, LLC my rights to bring legal action, if needed, against my insurer or health benefits plan to recover the costs of or enforce my rights to coverage of IntraOperative Neurophysiologic Monitoring services under my insurance or health benefits plan under applicable law, including without limitation under the Employee Retirement Income Security Act of 1974.

I understand that Revolution Monitoring, LLC may disclose personal health information (PHI) related to receipt of professional services for the purpose of enacting such as actions as defined above. I agree to provide the necessary information to and reasonably cooperate with and assist Revolution Monitoring to pursue third party payments of my claims for IntraOperative Neurophysiologic Monitoring services..

allege, assert, or rely on any exclusions, conditions, or other prerequisites within the health benefit plan, including but not limited to anti-assignment provisions.

38.     After Defendants either denied or underpaid the claims, Revolution or Plaintiff properly and timely appealed the non-payment or underpayment of the claims through Defendants' designated appeals channels. Defendants denied each and every appeal for each and every claim at issue in this lawsuit, thereby exhausting Revolution and Plaintiff's administrative remedies. Defendants failed to provide a specific reason or reasons for the adverse determination, failed to reference the specific plan provisions on which the determination was based, failed to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the health benefit plans, including but not limited to anti-assignment provisions, and failed to identify and provide a copy of the internal rule, guideline, protocol or other similar criterion that was relied upon in making the adverse determination. For example, Defendants' explanations often stated: (1) the claim was paid in accordance with the Allowable Amount; (2) the administrator maintained the prior decision; or the claim was processed correctly.

39.     As a result of Defendants' repeated failure to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the health benefit plans, Defendants have waived and are thereby estopped from asserting as such, including by not limited to anti-assignment provisions.

40.     Under the doctrine of laches, Defendants unreasonably delayed identification, assertion, or reliance on any exclusions, conditions, or other prerequisites within the health benefit plans including, by not limited to anti-assignment provisions.

11

41.     Despite multiple opportunities, Defendants failed to identify, allege, assert, or rely on any exclusions, conditions, or other prerequisites within the health benefit plans. As a matter of policy, Revolution would not have provided these services had Defendants identified such conditions reasonably prior to the medical procedure in question. Any attempt by Defendants to assert any exclusions, conditions, or prerequisites after a substantial amount of time is prejudicial to Revolution and Plaintiff. Therefore, Defendants are barred from enforcing any exclusions, conditions, or other prerequisites within the health benefit plans.

42.     Revolution billed defendants more than $30,000,000 for the particular medical services in and around the counties in which the services were performed. On information and belief, Defendants collectively paid less than $80,000, or less than 1% of the amount billed for the services rendered.

43.     For each claim at issue, Defendants failed to pay benefits in accordance with the plan document. The plan document establishes payment for out-of-network medical services based on an "allowable amount."[4] Payment of less than 1% for necessary medical services is drastically lower than any other recognizable third party commercial or government payor in the health insurance industry. Through Revolution's and Plaintiff's experience and established industry standards, the payment of less than two cents on the dollar to out-of-network medical

---

[4] The phrase "allowable amount" referenced throughout Plaintiff's Original Complaint refers to the specific plan terms and plan term definitions found in the Humana Plans. Allowable amount, for the purpose of this pleading, based on information and belief, respectively refers but is not limited to, the following: allowable amount, maximum allowable charge, allowable charge, allowable expense, eligible expenses, eligible charge, covered expenses, maximum allowance, reasonable and customary charge, schedule of maximum allowance, usual and customary, provider rate, allowed expense, participating provider rate, nonparticipating provider rate, and/or the customary charge. The allowable amounts, for the claims at issue, may be based on one or more of the following: the Administrator's sole discretion, the Plan at its sole discretion, contracts with in-network providers, the administrator's fee schedule, the average charge for the care in the area, the charge or average charge for the same or similar service, pricing data from the local Humana plan, the relative complexity of the service, in-network allowance, state or federal law, the rate of inflation using recognized measure, other reasonable limits, provider's billed charges, Humana's non-contracting amount, etc.

providers for the rendering of medical treatment is unprecedented. Furthermore, the course of dealings between Revolution and the respective Defendants demonstrates payment reimbursements at significantly higher rates than those made for the claims alleged in this case.

44. Moreover, based on information and belief, payment of less than 1% for necessary medical services is drastically lower than any possible source on which the respective health benefit plan's allowable amount language may be based.

45. Plaintiff's causes of action arise out of violations of two separate categories of insurance policies: ERISA plans and non-ERISA plans. The ERISA plans are "employee welfare benefit" plans as defined under 29 U.S.C. § 1002(3). The section of this complaint entitled "Defendants' Violations of ERISA" alleges causes of action for the plans arising under ERISA. Together, the ERISA and non-ERISA Plans are referred to in this complaint as the "Humana Plans."

46. On information and belief, the non-ERISA plans, within this litigation, are categorized as government plans and private plans. Government plans are those in which state or local government entities contract with Defendants to administer health benefits to their employees. Private plans are those in which individuals contract with Defendants to administer health benefits. These plans are governed by Texas state law. The section of this complaint entitled "State Law Claims" alleges causes of action for these plans arising under Texas state law. On information and belief, the overwhelming majority of Humana Plans at issue in this case call for the application of Texas Law. However, Plaintiff currently lacks complete information concerning the Humana Plans or Humana affiliates responsible for the failure to pay in accordance with the Humana Plan documents. Accordingly, Plaintiff reserves the right to

amend this complaint in order to address any state-law claims that may arise under or be governed by the laws of a state, other than Texas.

### C. DEFENDANTS' VIOLATIONS OF ERISA

47. The allegations contained in Paragraphs 1 through 46 are re-alleged and incorporated herein as if set forth verbatim.

48. 29 U.S.C. § 1002(8) defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." Revolution, as assignee of the ERISA insured members, is the beneficiary for all purposes throughout this Complaint. Plaintiff, as the Collection Agent for Revolution's Liquidating Trust, is likewise a beneficiary for all purposes throughout this Complaint.

49. 29 U.S.C. § 1002(21)(A)(iii) determines that one is a "fiduciary" to the extent that the person "has any discretionary authority or discretionary responsibility in the administration" of a health benefit plan. Defendants functioned as fiduciaries with respect to the plans at issue in this case, because Defendants exercised discretion, authority, and control in determining whether and to what extent benefits would be paid to Revolution. Therefore, Defendants are fiduciaries to Revolution and, by extension, Plaintiff.

50. With respect to those of its health benefit plans sponsored by private employers, Defendants are subject to ERISA (29 U.S.C. §§ 1001, et seq.), and its governing regulations.

51. Under ERISA, Defendants cannot systematically deny coverage for services (or types of services) unless the applicable health benefit plan contains an express exclusion specifying that such services are not covered under that plan's terms.

52. Under ERISA, Defendants cannot systematically underpay for services and must make payment of benefits in the manner and amounts required under the terms of the applicable health benefit plan(s)

53. In offering and administering the ERISA plans and making payment decisions, Defendants function as a "plan administrator" as that term is defined under ERISA, in that Defendants interpret and applies the plan terms, makes all coverage decisions, and/or provides for payment to Humana Insureds and/or their providers.

54. Defendants function as a "plan administrator" when they insure or administer a group health plan, when they are designated as a plan administrator for such a plan, or when they determine appeals and address grievances within the meaning of such terms under ERISA.

55. As a plan administrator, Defendants also assume various obligations specified under ERISA, including providing its Insureds and their assignees with a Uniform Medical Policy ("UMP"), a document designed to describe in layperson's language the material terms, conditions and limitations of the plan. The full details of the plan, which are summarized in the UMP, are contained in the Evidence of Coverage that governs each Humana Insured's plan.

56. If the employer, or an entity other than Defendants, are deemed to be the plan administrator, Defendants remain responsible for ensuring that the UMP complies with the law under its duties as a co-fiduciary as provided in ERISA, 29 U.S.C. § 1105.

57. Defendants also exercise discretionary authority and control in its administration of the ERISA plans, over claims processing and adverse benefit determinations with respect to claims of the Humana Insureds and their assignees, and in their interaction with Humana Insureds and their assignees. Therefore, Defendants also function as fiduciaries as defined under ERISA. Irrespective of their status as plan administrator(s), Defendants are liable for breach of their obligations as fiduciaries, as provided in ERISA 29 U.S.C. § 1109, because they exercise discretionary authority and/or control.

58.     Defendants' fiduciary functions include, for example, preparation and submission of Explanation of Benefits statements ("EOBs"); determinations regarding claims for benefits and coverage; oral and written communications with Humana Insureds, their assignees, and medical providers regarding coverage and claims determinations; and the processing, management, review, decision making and disposition of appeals and grievances under Humana Plans.

59.     Under ERISA, Defendants are required, among other things, to comply with the terms and conditions of its plans; to afford the Humana Insureds, or their providers where a valid assignment of benefits exists, an opportunity to obtain a "full and fair review" of any denied or reduced reimbursements; to establish and follow reasonable claims procedures prescribed in ERISA regulations; and to make appropriate and non-misleading disclosures to Humana Insureds, their assignees, and providers. Such disclosures include accurately setting forth plan terms; explaining the specific reasons why a claim is denied and the internal rules and evidence underlying such determinations; disclosing the basis for its interpretation of plan terms; and providing appropriate data and documentation concerning its coverage decisions.

60.     The comprehensive ERISA regulatory scheme governs, for example, the timing and notification of benefits determinations by Defendants; the manner and content of notification of benefits determinations; and the procedure, timing and manner of notification requirements concerning appeal of adverse benefits determinations by Defendants.

61.     With respect to post-service reimbursement claims, ERISA regulations require Defendants to notify claimants of an "adverse benefit determination," no later than 30 days after receipt of a claim. Under ERISA, the term "adverse benefit determination" is defined as follows:

> a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination,

or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan, and including, with respect to group health plans, a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit resulting from the application of any utilization review, as well as a failure to cover an item or service for which benefits are otherwise provided because it is determined to be experimental or investigational or not medically necessary or appropriate.

29 C.F.R. § 2560.503-1(m)(4).

62.     ERISA's reasonable claims procedure regulations further require Defendants, for example, to set forth the following information in an understandable manner in all adverse benefit determinations to claimants: (a) the specific reason or reasons for the determination; (b) reference to the specific plan provisions on which the determination is based; (c) a description of any additional material or information necessary to perfect the claim and an explanation of why such information is necessary; (d) a description of the plan's review procedures and the applicable time limits, including a statement advising of the right to bring a civil action under ERISA; (e) a statement regarding any internal rule, guideline, protocol, or other similar criteria relied upon in making the determination; and (f) a statement regarding the scientific or clinical judgment underlying a determination based on a medical necessity, experimental treatment or similar exclusion or limit. 29 C.F.R. §2560.503-1(g).

63.     Commencing in or about 2014, Defendants began inappropriately denying certain claims submitted by Revolution seeking payment for IONM medical services provided to Humana Insureds. The services were medically appropriate and necessary, covered by the applicable plan terms, and the claims should have been paid to Revolution as the Humana Insureds' lawful assignee.

64.     Defendants, without proper justification and in violation of the plan terms, stopped paying Revolution for many services provided to Humana Insureds.

65.     Defendants indiscriminately denied payment for most claims and services based on an unsupported and erroneous assertions,

66.     Defendants' treatment of Revolution's appeals of adverse benefits determinations was contrary to ERISA, applicable regulations, and the terms of applicable health benefit plans.

67.     For example, Defendants made claims determinations that had the effect of reimbursing less than the percentage of actual charges actual charges required by the applicable health benefit plans.

68.     48. Further, Defendants made such claims determinations without valid evidence or information to substantiate such determinations and/or in an arbitrary fashion, and did not provide a "full and fair review" of denied or reduced reimbursements.

**D.      REVOLUTION'S BANKRUPTCY**

69.     Defendants' refusal to pay Revolution continued through 2018, when Defendants' misconduct forced Revolution to cease operations and seek relief under the Bankruptcy Code.

70.     Between September 27, 2018 and October 5, 2018, Revolution filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") in the Northern District of Texas.

71.     On July 23, 2019, the Court entered an Order confirming the Debtors' Second Joint Plan of Reorganization ("Plan"), which among other things, provided for the creation of a Liquidating Trust, appointment of Jeffrey H. Mims as Liquidating Trustee,  and the appointment of the Plaintiff, MedARC, LLC to serve as Collection Agent.  In accordance with the Plan, on August 5, 2019, the Plan Supplement and Liquidating Trust Agreement were filed.

72.     Pursuant to the Plan and Plan Supplement, Plaintiff has standing to pursue Revolution's claims against these Defendants, and any net recovery will be used to pay creditors of the Debtors pursuant to the Plan and Plan Supplement.

# ALLEGATIONS

I. **COUNT I – PROVIDER'S CLAIMS UNDER 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3)**

73.     The allegations contained in Paragraphs 1 through 72 are re-alleged and incorporated herein as if set forth verbatim.

74.     Plaintiff brings this action as a beneficiary to recover benefits due under health benefit plans governed by ERISA. Under 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3).

75.     Humana Insureds remain personally liable for the billed charges incurred as a result of reasonable and necessary medical services received. Defendants' failure to pay in accordance with the plan document resulted in actual injury to the Humana Insureds.

76.     Debtors received valid assignments of all rights and benefits held by the Humana Insureds pursuant to ERISA plans administered by Defendants as set forth herein. Such assignments include all of the Humana Insureds' rights and benefits with respect to out-of-network treatments provided by Debtors.

77.     The execution of such assignments confers upon Debtors beneficiary status under ERISA § 502(a).  Plaintiff, as Collection Agent for the Liquidating Trustee of the Debtors, likewise retains beneficiary status pursuant to the Bankruptcy Plan.

78.     Through its course of dealings with Debtors and Plaintiff as set forth above, Defendants waived any right to enforce any anti-assignment provisions which may exist in the health benefit plans at issue.

79.     Defendants functioned at all relevant times as the "plan administrator" for the health benefit plans within the meaning of that term under ERISA, and continue to function in that capacity. Defendants function as a "plan administrator" when they insure or administer a

group health plan, when they are designated as a plan administrator for such a plan, or when they determine appeals and addresses grievances within the meaning of such terms under ERISA.

80. Defendants exercised (and continue to exercise) discretionary authority and control in its administration of the relevant health benefit plans and through interactions with Humana Insureds and Debtors in the manner described herein. Therefore, Defendants also functions as a "fiduciary" within the meaning of that term under ERISA.

81. For each claim at issue, Defendants abused their discretion in administering the claims, breached the terms of the plan documents, and violated their legal obligations as a plan administrator and/or fiduciary under ERISA and federal common law each time they failed to make payment, made only partial payment, or delayed payment of benefits, without complying with ERISA requirements governing the claims process and adverse benefit determinations.

82. Defendants' lack of disclosure to the Humana Insureds and to Revolution or Plaintiff relating to adverse benefit determinations, as required under ERISA, violated its legal obligations.

83. Revolution and Plaintiff properly appealed the claims at issue to the extent any such appeals were required.

84. Alternatively, all required appeals should be deemed exhausted or excused by virtue of Defendants' numerous procedural and substantive violations described herein, which deprived Revolution or Plaintiff of meaningful access to administrative remedies.

85. Defendants' breaches and violations have resulted in damages to Revolution (and by extension, Plaintiff) in an amount that will be proven at trial, but which Plaintiff estimates exceeds $30,000,000.

86.     As a result of the foregoing, Plaintiff seeks payment of unpaid benefits on the claims and interest from Defendants back to the dates when the claims were originally submitted to Defendants.

87.     82. Additionally, Plaintiff seeks the disgorgement of the profits or fees Defendants have earned by denying and/or delaying payment of Plaintiff's claims through conduct in violation of ERISA.

88.     Plaintiff further requests attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendants.

## II.     COUNT II – VIOLATION OF FIDUCIARY DUTIES OF LOYALTY AND CARE

89.     The allegations contained in Paragraphs 1 through 88 are re-alleged and incorporated herein as if set forth verbatim.

90.     Count II is brought under 29 U.S.C. § 1132(a)(2), 29 U.S.C. § 1104, and 29 U.S.C. § 1109.

91.     Debtor received valid Assignments of Benefits held by Humana Insureds pursuant to ERISA plans administered by Defendants as set forth herein. Such assignments confer on Revolution (and by extension Plaintiff) all of the Humana Insureds' rights and benefits with respect to out-of-network medical services provided by Revolution.

92.     The execution of such assignments confers upon Revolution the status of beneficiary under ERISA § 502(a). Plaintiff, as Collection Agent for Revolution's Liquidating Trustee, likewise retains beneficiary status pursuant to the Bankruptcy Plan.

93.     Defendants acted as fiduciaries to the beneficiaries – including Humana Insureds and Plaintiff – of the plans it administered, including the plans of Humana Insureds that received treatment or medical services from Debtors.

94.     Specifically, with respect to such Plans, Defendants acted as fiduciaries to beneficiaries (including Revolution and Plaintiff) because Defendants exercised discretion in determining the amounts of plan benefits that would be paid to plan beneficiaries. The exercise of discretion with regard to determination of plan benefits is an inherently fiduciary function, and confers the imposition of the duties of loyalty and care.

95.     Humana Insureds, and Plaintiff by way of assignment of the rights of the Humana Insureds to Revolution and then to Revolution's Liquidating Trust, may sue in a representative capacity on behalf of the individual Humana Plans at issue in this Complaint for relief with respect to breaches of fiduciary duties by Defendants.

96.     As a fiduciary of plans governed by ERISA, Defendants owe the beneficiaries of such plans (including Revolution and Plaintiff) a duty of care, defined as an obligation to act prudently, with the care, skill, prudence, and diligence that a prudent administrator would use in the conduct of an enterprise of like character.

97.     Additionally, as set forth in § 404(a)(1)(B) and (D) of ERISA, 29 U.S.C. § 1104(a)(1)(B) and (D), ERISA fiduciaries must ensure that they are acting in accordance with the documents and instruments governing the plan.

98.     Defendants violated the fiduciary duty of care it owed to Revolution and Plaintiff as beneficiary of the plans by its conduct set forth above, such as, making adverse benefit determinations with regard to payment or denial of plan benefits to Debtors contrary to and based upon reasons outside of the relevant plans, ERISA, and regulations promulgated thereunder, including, upon information and belief, Defendants' own financial interest.

99.     As a fiduciary of plans governed by ERISA, Defendants owe the beneficiary of such plans (including Revolution and Plaintiff) a duty of loyalty, defined as an obligation to

make decisions in the interest of beneficiaries, and to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of the beneficiaries. For example, Defendants are prohibited from making benefits determinations for the purpose of enhancing its own profitability at the expense of its beneficiaries. § 406 of ERISA, 29 U.S.C. § 1106.

100. Defendants violated the fiduciary duty of loyalty it owed to Revolution and Plaintiff as beneficiary of the relevant plans by its conduct set forth above, such as making adverse benefit determinations with regard to payment or denial of Plan benefits to Revolution or Plaintiff contrary to and based upon reasons outside of those permitted by the health benefit plans, ERISA, and regulations promulgated thereunder, including, upon information and belief, Defendants' own financial interest.

101. Revolution and Plaintiff have exhausted administrative remedies with respect to the claims at issue through completion of the relevant internal appeals process, to the extent necessary.

102. Alternatively, all appeals should be deemed exhausted by virtue of Defendants' numerous procedural and substantive violations described herein, which deprived Revolution and Plaintiff of meaningful access to administrative remedies.

103. As a result of the foregoing, Plaintiff is entitled to restitution and injunctive and declaratory relief pursuant to 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1132(a)(3), based upon Defendants' violation of its fiduciary duties.

104. Additionally, Plaintiff seeks the disgorgement of the profits or fees Defendants have earned by denying and/or delaying payment of Plaintiff's claims through conduct which violated its fiduciary duties under ERISA.

105. Further, Plaintiff is entitled to be made whole in the form of monetary compensation for the losses it incurred from Defendants' breaches of its fiduciary duties owed to Plaintiff, including interest back to the dates that the claims were originally submitted to Defendants.

## III. COUNT III – ATTORNEYS' FEES AND COSTS UNDER ERISA

106. The allegations contained in Paragraphs 1 through 105 are re-alleged and incorporated herein as if set forth verbatim.

107. 29 U.S.C. § 1132(g)(1) authorizes an award of reasonable attorneys' fees and costs of an ERISA action.

108. As a result of the above-described conduct by Defendants, Plaintiff was required to retain the services of counsel and necessarily incurred legal fees and costs in prosecuting this action.

109. Plaintiff anticipates incurring additional legal fees and costs in association with this action.

110. Plaintiff therefore requests an award of reasonable attorneys' fees and costs against Defendants in an amount that will be calculated at the conclusion of this action.

## IV. COUNT IV – STATE LAW – BREACH OF CONTRACT

111. The allegations contained in Paragraphs 1 through 110 are re-alleged and incorporated herein as if set forth verbatim.

112. Plaintiff brings this action as an assignee to recover benefits due under Texas state law. Plaintiff is entitled to recover benefits for medical services provided to patients by Revolution, from whom Revolution received an Assignment of Benefits. Revolution received an assignment of benefits for each claim at issue.

113. With respect to government plans, Texas government entities entered into contracts with Defendants to administer health benefits to their employees. Under these contracts, Defendants agreed to administer out-of-network benefits in accordance with the health benefit plans. Specifically, Defendants agreed to pay claims in accordance with the allowable amount. The allowable amount establishes payment for out-of-network medical services and is found within the health benefit plan. In turn, governmental employees paid higher premiums for out-of-network coverage and benefits.

114. These premiums constitute good and valuable consideration that Defendants received from their insureds and/or their employers in exchange for providing certain insurance benefits under the health benefit plans, including the out-of-network coverage and benefits.

115. Government employees are third-party beneficiaries to contracts entered between Defendants and Texas government entities. Government employees are parties to the health benefit plans entered between Texas government entities and its employees.

116. Moreover, under Texas state law, multiple instruments may be construed together and treated as one contract. Defendants and government entities enter into contracts for the ultimate purpose of administering health benefits to government employees in accordance with the health benefit plan. Specifically, Defendants agree to pay claims in accordance with the allowable amount found within the health benefit plan. Defendants must reference the health benefit plan to properly determine the allowable amount.

117. Revolution provided medical treatment to the Humana Insureds, and submitted appropriate bills directly to Defendants for said medical services in accordance with the terms of the health benefit plans and Texas law.

118.    Revolution has otherwise complied with all terms of the health benefit plans, the benefits of which have been lawfully assigned to Revolution, including the right to assert legal claims to enforce rights thereunder.

119.    Defendants' failure to pay out-of-network benefits in accordance with the allowable amount within the health benefit plan breached the contractual agreements to administer health benefits to government employees.

120.    With respect to private plans, individuals contracted with Defendants to administer health benefits. Under these contracts, Defendants agreed to provide out-of-network benefits for medical services rendered. In turn, individuals paid higher premiums for out-of-network coverage and benefits.

121.    Defendants' failure to pay out-of-network benefits in accordance with the allowable amount within the health benefit plan breached the contractual agreements to administer health benefits to individuals.

122.    Patients remain personally liable for the billed charges incurred as a result of reasonable and necessary medical services received. Defendants' failure to pay in accordance with the health benefit plan resulted in actual injury to the patient.

123.    As a direct or proximate result of Defendants material breaches of contract and non-payment for services duly rendered, Revolution, and by extension Plaintiff, have suffered damages.

## V.    COUNT V – STATE LAW – PROMISSORY ESTOPPEL

124.    The allegations contained in Paragraphs 1 through 123 are re-alleged and incorporated herein as if set forth verbatim.

125.    Plaintiff brings the promissory estoppel cause of action for all claims at issue in this lawsuit including claims under ERISA and non-ERISA plans. Plaintiff brings this cause of

action on behalf of the Liquidating Trustee of Revolution's estate, separate and apart from any assignment of benefits.

126. As a matter of policy and procedure, before Revolution rendered reasonable and necessary medical services for any of the claims at issue, Revolution received verification by telephone from Defendants that each patient was covered by a health benefit plan. Revolution obtained verification from Defendants that the particular procedures were covered by the health benefit plans. Additionally, Defendants verified Revolution would be paid a reasonable amount for the services rendered. Debtors would not have provided these services to these patients without first obtaining this verification from Defendants.

127. Revolution substantially and reasonably relied to its detriment on the promises made by Defendants. Revolution would not have provided services without such promises. Defendants knew or should have known that Revolution would rely upon the promises.

128. Because Revolution reasonably relied on Defendants' promises, and such reliance was foreseeable to Defendants, Revolution (and by extension Plaintiff) suffered damages in an amount to be determined at trial.

## VI. COUNT VI – QUANTUM MERUIT

129. The allegations contained in Paragraphs 1 through 128 are re-alleged and incorporated herein as if set forth verbatim.

130. Debtors provided services and other things of value to Humana and Humana Insureds (*to wit* medical services).

131. Humana and Humana Insureds accepted the services or other things of value.

132. Humana has not paid for such services and things of value.

133.     Plaintiff, as Collection Agent for the Liquidating Trustee of Revolution's estate,

therefor is entitled to payment from Humana for the reasonable value of the services rendered in

an amount to be proven at trial.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the court enter an order:

A.  Finding that Defendants breached the terms of the health benefit plans, and awarding compensatory damages to Plaintiff for unpaid benefits, as well as awarding declaratory relief with respect to Defendants' violations of ERISA, including a declaration that Defendants' claim processing methodology with respect to claims assigned to Plaintiff violates ERISA;

B.  Finding that Defendants breached their fiduciary obligations owed to Plaintiff under ERISA and awarding compensatory damages resulting therefrom;

C.  Finding that Defendants failed to provide "full and fair review" of claims denials or reductions to Plaintiff as required under ERISA and its implementing regulations, and awarding compensatory damages and declaratory relief with respect to Defendants' violations of ERISA;

D.  Finding that Defendants violated federal claims procedures under ERISA and that "deemed exhaustion" under the ERISA regulations is in effect as a result of Defendants' actions;

E.  Ordering Defendants to disgorge to Plaintiff the profits or fees they have earned by denying and/or delaying payment of Plaintiff's claims through conduct in violation of ERISA;

F.  Awarding Plaintiff compensatory damages on all claims in the amount to be established at trial;

G.  Awarding Plaintiff its attorneys' fees on its ERISA claims. *See* 29 U.S.C. § 1132(g)(1) (allowing a court, in its discretion to award "a reasonable attorney's fee and costs of action to either party.");

H.  Awarding Plaintiff its attorneys' fees on its state law claims pursuant to the Texas Civil Practices and Remedies Code section 38.001;

I.  Awarding Plaintiff punitive and exemplary damages against Defendants in an amount to be proven at trial;

J.  Awarding Plaintiff pre-judgment and post-judgment interest at the highest rate allowed plus its taxable court costs.

K. Awarding Plaintiff all such other and further relief as the Court deems just and proper under the circumstances.

Dated: September 18, 2020

/s/ *Lewis T. LeClair*
Lewis T. LeClair
Texas State Bar No. 12072500
**MCKOOL SMITH, P.C.**
300 Crescent Court Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

/s/ *Nicholas A. Foley*
Nicholas A. Foley
Texas State Bar No. 07208620
8146 San Fernando Way
Dallas, Texas 75218

***ATTORNEYS FOR PLAINTIFF
MEDARC, LLC***